**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Szymanowski v. Grahl,* **Slip Opinion No. 2015-Ohio-3699.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3699

THE STATE EX REL. SZYMANOWSKI; DUMMINGER ET AL., APPELLANTS, *v.*

GRAHL, AUD., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *State ex rel. Szymanowski v. Grahl,* **Slip Opinion No. 2015-Ohio-3699.]**

*Elections—Mandamus—Action to compel city auditor to transmit referendum petition and related ordinance to county board of elections—Ordinance was the "first" measure for purposes of R.C. 731.30, so it was subject to referendum—Court of appeals' judgment reversed—Writ granted.*

(No. 2015-1350—Submitted September 9, 2015—Decided September 11, 2015.)

APPEAL from the Court of Appeals for Sandusky County, No. S-15-004, 2015-Ohio-3074.

_____

**Per Curiam.**

{¶ 1} This expedited election appeal involves a referendum petition to invalidate a Fremont City Council Ordinance and thereby save the Ballville Dam

from demolition. Appellants sought a writ of mandamus in the Sixth District Court of Appeals to compel appellee, Paul Grahl, Fremont's city auditor, to transmit a certified copy of the ordinance, along with the petitions, to the board of elections. The appellate court denied the writ. We reverse the judgment of the court of appeals and grant the writ.

*Background*

{¶ 2} On November 20, 2014, the city council of Fremont, Ohio, passed Ordinance No. 2014-3742, titled "An ordinance authorizing the mayor to proceed with the process of removing the Ballville Dam and declaring an emergency." Although drafted as an emergency measure, it passed only by a simple majority and therefore did not take effect immediately as an emergency measure and was subject to referendum.

{¶ 3} A referendum petition was delivered to Grahl. Grahl did not transmit the referendum petition to the board of elections.

{¶ 4} Clemens Szymanowski, Dennis Dumminger, and Kathie Collins filed suit for a writ of mandamus, which the court of appeals denied. Dumminger and Collins appealed as of right, and we ordered expedited briefing.

*The issue presented*

{¶ 5} The dispositive question in this appeal is, which municipal ordinance or resolution triggered the right of referendum relating to the removal of Ballville Dam? R.C. 731.30 provides:

> Whenever the legislative authority of a municipal corporation is required to pass more than one ordinance or other measure to complete the legislation necessary to make and pay for any public improvement, [the statutory provisions governing initiatives and referenda] shall apply only to the first ordinance or

other measure required to be passed and not to any subsequent ordinances and other measures relating thereto.

**{¶ 6}** The court of appeals held that Ordinance No. 2014-3742 was not subject to referendum, because it was not the first ordinance passed in connection with this public-improvement project. 6th Dist. Sandusky No. S-15-004, 2015-Ohio-3074, ¶ 44. According to the appellate court, city council first approved the project in 2008, with the passage of Ordinance No. 2008-3462. *Id.* That measure, the court found, "specifically call[ed] for 'the removal of the Ballville Dam.' " *Id.*, ¶ 36. And after that ordinance passed, according to the court, city council passed five subsequent resolutions and ordinances relating to the Ballville Dam prior to Ordinance No. 2014-3742. *Id.*, ¶ 33.

**{¶ 7}** Dumminger and Collins argue that those prior measures did not trigger their right to a referendum on removal of the dam. They assert that "Fremont city council never actually specifically committed to ordaining removal of the dam until November 20, 2014, and therefore, the citizens had no reason to seek a referendum beforehand."

**{¶ 8}** Grahl argues that the ordinance in question is a necessary part of a public-improvement project and the project had two stages: first, construction of a reservoir, and second, removal of the dam. When the project is considered as a whole, he contends, Ordinance No. 2014-3742 was "the eighth ordinance and the tenth legislative act taken by the Fremont City Council" relating to "the public improvement in question," and thus was not subject to referendum.

*Legal analysis*

**{¶ 9}** There is little case law defining a "first ordinance" under R.C. 731.30, and what little case law exists is contradictory. On the one hand, there is *State ex rel. Kleem v. Kafer*, 13 Ohio App.3d 405, 469 N.E.2d 533 (8th Dist.1983). The issue in that case was whether referendum was possible on an

ordinance authorizing a contract for architectural services to alleviate overcrowding in the Berea Municipal Building. The appellate court held that the ordinance was not the first action, for purposes of R.C. 731.30, because the city council had enacted two prior ordinances, one authorizing a contract for preliminary drawings and a study of costs and needs, and the second on the cost of acquiring and renovating other buildings for use by the city. *Id.* at 406-407. In other words, according to *Kleem*, the right of referendum is triggered when the legislature undertakes any action to assess a project, even if approval comes later.

{¶ 10} On the other hand, there is *Peppers v. Beier*, 75 Ohio App.3d 420, 599 N.E.2d 793 (3d Dist.1991).

{¶ 11} Over the course of eight years, the city of Fostoria passed seven ordinances and a one resolution concerning construction of a reservoir. One question in the case was which measure was "first" within the meaning of R.C. 731.30, for purposes of preventing the reservoir project by initiative. The trial court held that the "first" ordinances were passed before the project was officially approved, citing preliminary ordinances authorizing the mayor to negotiate a construction agreement with the Ohio Department of Natural Resources ("ODNR") and authorizing the city to engage a law firm to acquire land for the project. *See id.* at 424.

{¶ 12} But the court of appeals disagreed. It held that the first measure passed that was *necessary* to complete the public improvement was the resolution declaring the necessity of constructing the reservoir. *Id*. at 424-425.

{¶ 13} The analysis in *Peppers* highlights a little-noted aspect of the statute. R.C. 731.30 applies, according to its terms, "[w]henever the legislative authority of a municipal corporation is *required* to pass more than one ordinance or other measure to complete the legislation necessary to make and pay for any public improvement." (Emphasis added.) The cases almost never discuss what the word "required" means in that sentence.

4

{¶ 14} The word "required," in this context, could have at least two meanings. In their reply brief, Dumminger and Collins argue (for the first time) that this language applies only to projects that by statute must be authorized in multiple steps. Alternatively, "required" could refer to any measure that is necessary to the completion of the project, which could be any official authorization or commitment to the project. This appears to be how the *Peppers* court interpreted the statute.

{¶ 15} Resolution of this case does not require us to pick from among the competing interpretations of the word "required," so we decline to do so. The fact is, under any reasonable construction of the statute, Ordinance No. 2014-3742 was the first ordinance required for removal of the Ballville Dam.

*The prior ordinances and resolutions*

1. Ordinance No. 2008-3462 and the 2008 contract with ODNR

{¶ 16} On February 14, 2008, the director of the Ohio Environmental Protection Agency ("EPA") issued findings and orders to the city of Fremont regarding its public water system. Among other things, the director ordered Fremont to begin construction of an off-stream reservoir to hold approximately 750 million gallons of water. The city was required to begin construction by the end of November 2008 and to complete construction by March 15, 2011.

{¶ 17} In response to the EPA's order, on June 9, 2008, the Fremont city council passed Ordinance No. 2008-3462. The first two preamble clauses mentioned the director's order to construct the off-stream reservoir by March 15, 2011, and that failure to comply with the order could result in civil and administrative penalties. The remaining preamble clauses noted that Fremont had entered into negotiations with ODNR to acquire funding for the reservoir, that ODNR had committed $5,000,000 from the Boat-Angler Fund toward the construction of the off-stream reservoir, and that to be eligible for the money, the

city had to, among other things, allow reservoir access for anglers and "commit to the removal of the Ballville Dam by December 31, 2012."

{¶ 18} Based on these predicate facts, the ordinance ordained: "[T]he Mayor is hereby authorized to enter into an agreement * * * with [ODNR], in connection with the construction of an off-stream reservoir and the removal of the Ballville Dam."

{¶ 19} Two days later, the mayor and ODNR signed a "Subsidy Agreement for Boat-Angler Access Program." ODNR agreed to commit up to $5,000,000 to reimburse Fremont for costs incurred in building the reservoir through June 30, 2009. "Upon completion of the reservoir," Fremont was required to "breach, decommission and remove no less than 75% of the linear length of the dam to the riverbed elevation such that the channel is unobstructed." The agreement provided that "removal of the dam shall be completed by December 31, 2012." The record contains four subsequent measures enacted before that date relating to the dam and/or the reservoir, and none of them purports to extend that deadline.[1]

{¶ 20} Without question, Ordinance No. 2008-3462 authorized removal of the dam, and was therefore the first opportunity for referendum on the question. This does not mean, however, that it was also the last opportunity for referendum. The city's authorization to remove the dam expired on December 31, 2012. Thereafter, efforts to remove the dam would require fresh authorization, and that new authorization measure would restart the opportunity to pursue a referendum.

{¶ 21} The court of appeals reached a different conclusion because it determined that the parties had extended the deadline of the original agreement. 2015-Ohio-3074, ¶ 9. On March 20, 2015, a new agreement gave Fremont until

---

[1] Those measures are (1) Resolution No. 2008-1752 (passed Oct. 16, 2008), (2) Ordinance No. 2009-3483 (passed Feb. 5, 2009), (3) Ordinance No. 2009-3508 (passed Nov. 5, 2009), and (4) Resolution No. 2011-1811 (passed Jan. 6, 2011).

December 31, 2017, to complete the removal of the dam. But by the time that agreement was executed, the city had already adopted a fresh authorization (the ordinance at issue here), and the effort to test it by referendum was underway. The city cannot defeat the application of a referendum by retroactively tying a new authorization to remove the dam to a project whose authorization had expired.

2. Measures enacted between January 2013 and November 2014

{¶ 22} Between January 2013 and November 2014, the city continued to consider removing the dam, but the ordinances passed during that time indicate that the city was not committed to the project. For example, on September 19, 2013, city council increased the budget for the contractor who had been hired to prepare an environmental-impact statement (Ordinance No. 2013-3655) and separately increased the budget for the consultant who had been hired to help with obtaining permits to allow the consultant to create a database of comparable dams (Ordinance No. 2013-3656). However, there was as yet no final commitment to the project, as evidenced by Ordinance No. 2014-3695, passed on April 3, 2014, by which the city approved entering into a contract "for either removing or repairing the dam." Finally, on July 17, 2014, city council passed Ordinance No. 2014-3722, which authorized another change order for the environmental-impact study.

{¶ 23} A referendum on any of these measures would not have called for a vote on the question whether or not to remove the Ballville Dam. After the 2008 ordinance approving removal of the dam expired, the issue was not again ripe for referendum until November 20, 2014, when Ordinance No. 2014-3742 expressly authorized the mayor to proceed with removal.

*Conclusion*

{¶ 24} Based on the foregoing, we grant the writ of mandamus, and we order the auditor of Fremont to transmit the petitions and certified text of the ordinance to the Sandusky County Board of Elections.

Judgment reversed,

and writ granted.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Mayle Ray & Mayle, L.L.C., Andrew R. Mayle, Jeremiah S. Ray, and Ronald J. Mayle, for appellants.

James F. Melle, Fremont Law Director, for appellee.

_____